UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>BNP PARIBAS SA; BNP PARIBAS NORTH )<br>AMERICA; BNP PARIBAS HOUSTON )<br>AGENCY; and JOVENAL MIRANDA CRUZ, )<br><br>Defendants. )<br>_____ ) | Civil Action No. |

## UNITED STATES' COMPLAINT

The United States of America ("United States"), for its complaint, alleges as follows:

## INTRODUCTION

1.      This is an action by the United States for treble damages and civil penalties

against defendants BNP Paribas SA, BNP Paribas North America, BNP Paribas Houston Agency

(collectively "BNP"), and Jovenal Miranda Cruz, a.k.a. Jerry M. Cruz ("Cruz"), for violations of

the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733; against defendants BNP and Cruz for

damages for the common law and equitable claims of unjust enrichment; and against defendants

BNP for damages for the common law and equitable claims of payment by mistake.

2.      In this action, the United States alleges that from 1998 through 2006 (the

"Relevant Time Period"), BNP and its former Vice President, Jerry M. Cruz, engaged in a

scheme to defraud the United States in connection with commodity payment guarantees provided

by the U.S. Department of Agriculture ("USDA") under its Supplier Credit Guarantee Program

("SCGP").  Under the SCGP, USDA provided payment guarantees to U.S.-based exporters on their sales of grain and other commodities to commodity purchasers/ importers in Mexico, and which guarantees the U.S.-based exporters then assigned to BNP.  The regulations governing the SCGP made clear that an exporter was ineligible to obtain SCGP payment guarantees for commodity sales to any foreign purchaser/ importer with which it was under common ownership and/or control.

3.      The scheme involved at least four U.S.-based commodity export companies ("U.S. Exporters") and at least four Mexican companies ("Mexican Importers"), all under the common ownership and/or control of Fernando Pablo Villarreal Cantu ("Villarreal"), a citizen of Mexico.  The U.S. Exporters are: Laredo Grain Company ("Laredo Grain"); Mid-Valley Grain Company ("Mid-Valley Grain"); U.S.A. Meat & Grain Company ("U.S.A. Meat & Grain"); and Alamo Feeders, Inc. ("Alamo Feeders").  The Mexican Importers are: Internacional Grain S.A. de C.V. ("Internacional Grain"); Central de Granos de la Laguan S.A. de C.V. ("Central de Granos"); Compania Ganadera Vi-Ba Hnos., S.A. de C.V. ("Compania Ganadara"); and Granos Rolados S.A. de C.V. ("Granos Rolados").

4.      BNP entered into agreements with each of the U.S. Exporters to accept assignment of commodity guarantees issued to the U.S. Exporters under the SCGP in exchange for a fee, plus the U.S.-backed guaranteed payment on each commodity sale.  During the Relevant Time Period, the U.S. Exporters applied for and obtained USDA payment guarantees under the SCGP for commodity shipments to the Mexican Importers, and in accordance with their agreements with BNP, assigned the payment guarantees on their commodity exports to BNP.  Because the U.S. Exporters and Mexican Importers were under common ownership and/or

2

control, which fact defendants knew, none of the commodity sales between these entities were eligible for SCGP payment guarantees.  Moreover, many of the commodity transactions between the U.S. Exporters and Mexican Importers were entirely fictitious, with no shipment of the commodity ever taking place.  When the Mexican Importers defaulted on their payment obligations for their commodity purchases, BNP and Cruz presented, or caused to be presented, false or fraudulent claims to USDA on commodity payment guarantees issued pursuant to the SCGP, and did so knowing that none of the transactions were eligible for the guarantees because the U.S. Exporters and the Mexican Importers involved were commonly owned and/or controlled.

5.      Several individuals who had a working role in one or more of the export companies and participated in the conspiracy were indicted in the Southern District of Texas in March 2010.  The indicted individuals are: Cruz; Fernando Pablo Villarreal Cantu ("Villarreal"); Robert Wayne See ("See"); Jorge Eduardo Gonzalez Pizana ("Gonzalez"); Javier Heriberto Hinojosa ("Hinojosa"); and Joel Villalon ("Villalon").

6.      The defendants' actions, along with those of their co-conspirators, subverted the goals, purposes, and operations of the SCGP, and caused damage to the United States.

7.      As more fully set forth below, during the Relevant Time Period, between 1998 and 2006, the defendants and their co-conspirators made and used false statements and fraudulent means to wrongfully obtain SCGP guarantees and payments thereunder.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 31 U.S.C. §§ 3729-3733, and 28 U.S.C. §§ 1331, 1345, and 1355, and its general common law and equitable jurisdiction.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 because a substantial part of the events giving rise to the claims herein occurred in this District, and pursuant to 31 U.S.C. § 3732(a) because at least one of the defendants can be found, resides, or transacts business in this District.

## THE PARTIES

10.     Plaintiff is the United States of America, suing on behalf of the United States Department of Agriculture ("USDA"), an agency of the United States of America, the Foreign Agricultural Service ("FAS"), a subagency of the USDA, and the Commodity Credit Corporation ("CCC"), a federally chartered corporation within USDA.  The CCC was created to stabilize, support, and protect farm income and prices.  The CCC also helps to maintain balanced and adequate supplies of agricultural commodities and aids in their orderly distribution.  During the Relevant Time Period, the SCGP was under the general administrative responsibility of the General Sales Manager of the FAS.  The USDA, CCC, and FAS are sometimes collectively referred to in this Complaint as "USDA."

11.     Defendant BNP Paribas SA is a French public limited company doing business in the United States in the State of Texas, and more particularly within the geographical limits of the United States District Court, Southern District of Texas.

12.     Defendant BNP Paribas North America, Inc. ("BNP Paribas NA"), a wholly owned subsidiary of BNP Paribas SA, is a U.S. financial services corporation incorporated in Delaware, and doing business in the State of Texas, and more particularly within the geographical limits of the United States District Court, Southern District of Texas.

4

13.     BNP Paribas, Houston Agency, a wholly owned subsidiary of BNP Paribas NA, is a Texas corporation, doing business in the State of Texas, and more particularly within the geographical limits of the United States District Court, Southern District of Texas.

14.     Defendants BNP Paribas SA, BNP Paribas NA, and BNP Paribas Houston Agency, and their predecessors and successors, subsidiaries, affiliates or assigns, shall be referred to hereafter collectively as "BNP."

15.     Defendant Jovenal Miranda Cruz a.k.a. Jerry M. Cruz ("Cruz") was a BNP Vice President working at BNP in Houston.  Cruz was BNP's Manager of Trade Finance during the Relevant Time Period in the area of general corporate banking.  Upon information and belief, Cruz currently resides in the State of Texas.  As BNP's Manager of Trade Finance, Cruz was instrumental in establishing lines of credit to the U.S. Exporters through the BNP approval process.  Cruz further approved individual loans to the U.S. Exporters under those lines of credit. As part of his responsibilities at BNP, Cruz was expected to develop new clients and business volume under the USDA Programs, such as SCGP, as well as increase business with existing clients, all for the benefit of BNP.

16.     The Court has personal jurisdiction over the defendants by reason of their actions described below.

## The False Claims Act

17.     The FCA, at 31 U.S.C. § 3729(a)(1), provides that a person is liable to the United States Government for each instance in which the person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval."

5

18.     As amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), the false statements provision of the FCA makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B) (2009).

19.     The FCA further provides, at 31 U.S.C. § 3729(a)(3), that a person is liable to the United States Government if the person "conspires to commit a violation" of the FCA.

20.     At 31 U.S.C. § 3729(b), the FCA defines the term "knowingly" to mean that a person, with respect to information: "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information"; and further provides that no proof of specific intent to defraud is required.

## FACTUAL ALLEGATIONS

### Program Background

21.     During the Relevant Time Period, the SCGP was an export credit guarantee program administered by the USDA Foreign Agricultural Service ("FAS").  The regulations that govern the SCGP are set forth at 7 C.F.R. § 1493.  The SCGP was designed to make credit available to U.S.-based exporters to finance commercial exports of U.S. agricultural products to eligible countries, while providing competitive credit terms to foreign purchasers of U.S. agricultural commodities.

22.     Under the SCGP, U.S. exporters could sell U.S. agricultural commodities to foreign importers on credit partially guaranteed by the CCC.  The direct credit extended by the U.S. exporter to the foreign importer had to be secured by a dollar denominated promissory note

signed by the foreign importer in favor of the U.S. exporter, and had to require payment in full within 180 days.  To obtain a payment guarantee from CCC under the SCGP, a qualified exporter had to apply for the guarantee before the date of the export.  Exporters were required to pay a fee for the guarantee.

23.     Under the SCGP, the U.S. exporter could obtain access to financing – such as a line of credit – before the foreign importer's payment on the commodity purchase was due, by assigning both the foreign importer's promissory note and the exporter's rights to payment under CCC's guarantee to a financial institution such as BNP.

24.     The guarantee offered by CCC under the SCGP guaranteed payment by USDA to the U.S. exporters of up to 65 percent of the expected export value at the time of the application process, or 65 percent of the actual shipment value, if that is less, of a U.S. agricultural commodity purchased by an eligible foreign importer from an eligible U.S. exporter.

25.     Pursuant to federal regulation, an exporter of U.S. agricultural commodities was ineligible to participate in the SCGP if the exporter was directly or indirectly owned or controlled by the importer or by a person or entity which also owned or controlled the importer. Further, the exporter was not eligible to participate in the SCGP if the exporter directly or indirectly owned the importer.  Thus, a material requirement to qualify for the SCGP was that the exporter must have negotiated the terms of the export credit sale with an unrelated foreign importer to export an eligible U.S. commodity.

26.     Under the SCGP, where the exporter had assigned the CCC guarantee to a financial institution, the financial institution could submit a claim to CCC and collect on the guarantee from the CCC in the event an importer failed to make payment on the commodities.

## **The Scheme**

27.     During the Relevant Time Period, from in or about 1998, and continuing through on or about December 31, 2006, defendants conspired to and in fact did defraud the United States by getting false and fraudulent claims allowed or paid, and to commit violations of the FCA by knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval and knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.  Defendants carried out this conspiracy as described by the following paragraphs.

28.     Beginning on or about 1998 and continuing throughout the Relevant Time Period, as part of their scheme to defraud the United States, BNP entered into and maintained a series of Master Purchase and Sale Agreements ("MPSAs") with each of the U.S. Exporters: Laredo Grain, Mid-Valley Grain, U.S.A. Meat & Grain and Alamo Feeders.  The MPSAs established the mechanism through which BNP and Cruz participated in and generated profits for themselves through the SCGP.

29.     Each of the MPSAs with the U.S. Exporters provided that BNP would receive profits on the export sales transactions of the U.S. Exporters that were guaranteed by the USDA under the SCGP.  Pursuant to the MPSAs, BNP only agreed to participate in export sale transactions that were, in fact, guaranteed by the USDA under the SCGP.

30.     On October 27, 1998, BNP (then called Banque Nationale de Paris) entered into an MPSA with U.S.A. Meat & Grain, one of the U.S. Exporters.  According to its terms, this MPSA applied to BNP's purchase of accounts representing rights to payment in connection with sales of eligible commodities from U.S.A. Meat & Grain to Internacional Grain, one of the

Mexican Importers, **which sales were guaranteed by the CCC under the SCGP**.  BNP purchased these rights for an amount equal to the guarantee value of the sale less the product of the Prime Rate of interest charged by BNP on the date of purchase multiplied by the guarantee value, divided by two.  Pursuant to the terms of the MPSA, BNP retained for its benefit the right to conduct investigations of the importer and the transaction giving rise to the sale, including verification that the importer is satisfied with the goods and credit searches on the importer.  The MPSA was executed by Jerry M. Cruz, Vice President, on behalf of BNP.

31.     On November 16, 1999, BNP (then called Banque Nationale de Paris) entered into an MPSA with Mid-Valley Grain, one of the U.S. Exporters.  According to its terms, this MPSA applied to BNP's purchase of accounts representing rights to payment in connection with sales of eligible commodities from Mid-Valley Grain to Central De Granos, one of the Mexican Importers, **which sales were guaranteed by the CCC under the SCGP**.  BNP purchased these rights for an amount equal to the guarantee value of the sale less the product of the Prime Rate of interest charged by BNP on the date of purchase multiplied by the guarantee value, divided by two.  Pursuant to the terms of the MPSA, BNP retained for its benefit the right to conduct investigations of the importer and of the transaction giving rise to the sale, including verification that the importer is satisfied with the goods and credit searches on the importer.  The MPSA was executed by Aurora L. Abella, Vice President, on behalf of BNP.

32.     On March 8, 2001, BNP entered into an MPSA with Alamo Feeders, one of the U.S. Exporters.  According to its terms, this MPSA applied to BNP's purchase of accounts representing rights to payment in connection with sales of eligible commodities from Alamo Feeders to Compania Ganadera, one of the Mexican Importers, **which sales were guaranteed by**

9

**the CCC under the SCGP**.  BNP purchased these rights for an amount equal to the guarantee value of the sale less the product of the Prime Rate of interest charged by BNP on the date of purchase multiplied by the guarantee value, divided by two.  Pursuant to the terms of the MPSA, BNP retained for its benefit the right to conduct investigations of the importer and of the transaction giving rise to the sale, including verification that the importer is satisfied with the goods and credit searches on the importer.  The MPSA was executed by Jerry Cruz, on behalf of BNP.  A signature that appears to be that of Aurora L. Abella, Vice President of BNP, is likewise on the signature line for BNP.

33.     On October 27, 2004, BNP entered into an MPSA with Laredo Grain, one of the U.S. Exporters.  According to its terms, this MPSA applied to BNP's purchase of accounts representing rights to payment in connection with sales of eligible commodities from Alamo Feeders to Granos Rolados, one of the Mexican Importers, **which sales were guaranteed by the CCC under the SCGP**.  BNP purchased these rights for an amount equal to the guarantee value of the sale less the product of the Prime Rate of interest charged by BNP on the date of purchase multiplied by the guarantee value, divided by two.  Pursuant to the terms of the MPSA, BNP retained for its benefit the right to conduct investigations of the importer and of the transaction giving rise to the sale, including verification that the importer is satisfied with the goods and credit searches on the importer.  The MPSA was executed by Jerry M. Cruz, Vice President, on behalf of BNP.

34.     In accordance with the MPSAs, during the Relevant Time Period, each of the U.S. Exporters, with the knowledge of their co-conspirators, including BNP and Cruz, applied to the CCC for guarantees of U.S. agricultural commodity sales to their respective Mexican Importers

pursuant to the SCGP.  Between July 2004 and February 2005, defendants and their co-conspirators falsely and/or fraudulently obtained guarantees from the CCC pursuant to the SCGP; guarantees that eventually were collected on by BNP resulting from the Mexican Importers' default on their payment obligations.  The dates of these guarantees are set forth below in Paragraph 48.

35.     Each of the U.S. Exporters – U.S.A. Meat & Grain, Mid-Valley Grain, Alamo Feeders, and Laredo Grain – were owned and/or controlled by Villarreal.

36.     Each of the Mexican Importers – Internacional Grain, Central de Granos, Compania Ganadara, and Granos Rolados – were owned and/or controlled by Villarreal.

37.     Villarreal exercised control and authority over each of the U.S. Exporters and the Mexican Importers throughout the Relevant Time Period.

38.     Because of the explicit and material regulatory requirements of the SCGP, the U.S. Exporters were ineligible to receive SCGP loan guarantees for sales to the related Mexican Importers.

39.     Although the transactions were not eligible under the SCGP, in accordance with the MPSAs, BNP, Cruz and their co-conspirators, created and used false and fraudulent promissory notes purporting to document a financial obligation between and among a qualified exporter, a qualified importer, and a related financial institution.

40.     In each instance, and in accordance with the MPSAs, upon the receipt of a guarantee from CCC, the U.S. Exporter assigned the CCC guarantee to BNP, along with the payment obligation from the Mexican Importer.  In exchange therefor, BNP provided a line of

credit (up to the amount of the guarantee) to the U.S. Exporter (minus the amount of money BNP charged for the business).

41.     Because each of these transactions violated material requirements prohibiting identity of control between importers and exporters, each transaction resulted in a falsely or fraudulently obtained guarantee from the CCC.  Morever, in some instances, defendants and their co-conspirators obtained fraudulent guarantees for commodity transactions that did not even exist, with no shipment of the commodity ever taking place.

42.     Defendants and their co-conspirators knowingly concealed from the USDA the U.S. Exporters' and Mexican Importers' ineligibility to participate in the SCGP due to the ownership and/or control of both the exporters and importers by Villarreal.

43.     Defendants and their co-conspirators knowingly concealed from the USDA the fact that the grain transactions between the U.S. Exporters and their respective Mexican Importers were not arms-length transactions.

44.     As part of his responsibilities at BNP, Cruz was expected to develop new clients and business volume under the USDA Programs, such as SCGP, as well as increase business with existing clients, all for the benefit of BNP.  As BNP's Manager of Trade Finance, Cruz negotiated with the U.S. Exporters for assignment of the SCGP guarantees and the promissory notes of the U.S. Importers, and was instrumental in establishing lines of credit for the U.S. Exporters through BNP's approval process.  By financing these transactions, BNP earned fees in exchange for providing a line of credit to U.S. Exporters that was fully secured by the United States.  In acquiring and maintaining this business for BNP, Cruz acted within the scope of his employment and for the benefit of his employer, BNP.

45.     Defendants and their co-conspirators knew that the guarantees described above were falsely and/or fraudulently obtained because the U.S. Exporters and Mexican Importers were related parties and ineligible for an SCGP guarantee in conjunction with the proposed transactions.  Cruz solicited and received payments of kickbacks and/or bribes from Villarreal directly, and through others in the conspiracy, for BNP's role in financing the scheme through expanding lines of credit from BNP to the U.S. Exporters based on ineligible commodity sales to the Mexican Importers.

46.     BNP and Cruz allowed the co-conspirators to withdraw funds on lines of credit, thereby increasing the exposure and ultimate liability of the CCC on the falsely obtained guarantees.

47.     During the Relevant Time Period, beginning in or about April 2005, the Mexican Importers began to default on their payment obligations guaranteed by the CCC.

48.     As the Mexican Importers defaulted on their payment obligations, BNP, Cruz and their co-conspirators submitted or caused to be submitted at least the following claims to the CCC on commodity payment guarantees, pursuant to the SCGP, totaling more than $78 million, and which were then paid by the CCC, as set forth in the Table.  The Table lists the date each of the guarantees was approved by CCC, the date CCC received BNP's claims on the each guarantee, the date CCC paid BNP on the guarantee, and the payment amount of the guarantee.

| Guarantee Approval Date | Date Claim Received | Date Claim Paid | Total |
|---|---|---|---|
| 7/18/2004 | 04/22/05 | 06/07/05 | $ 1,153,382.83 |
| 7/18/2004 | 04/22/05 | 06/07/05 | $ 576,269.87 |
| 7/31/2004 | 04/25/05 | 06/07/05 | $ 328,754.40 |

| | | | | |
|---|---|---|---|---|
| 10/18/2004 | 04/22/05 | 06/07/05 | $ | 698,868.95 |
| 10/18/2004 | 04/22/05 | 06/07/05 | $ | 140,296.49 |
| 10/18/2004 | 04/22/05 | 06/07/05 | $ | 210,522.25 |
| 7/31/2004 | 06/21/05 | 08/26/05 | $ | 509,640.49 |
| 7/31/2004 | 04/22/05 | 08/26/05 | $ | 19,915.43 |
| 7/31/2004 | 04/22/05 | 08/26/05 | $ | 499,281.48 |
| 9/21/2004 | 04/25/05 | 08/29/05 | $ | 429,798.52 |
| 9/21/2004 | 04/25/05 | 08/29/05 | $ | 106,887.25 |
| 9/21/2004 | 04/25/05 | 08/29/05 | $ | 21,363.18 |
| 9/21/2004 | 05/11/05 | 08/29/05 | $ | 201,282.54 |
| 9/21/2004 | 05/11/05 | 08/29/05 | $ | 413,958.65 |
| 9/21/2004 | 04/25/05 | 08/29/05 | $ | 21,378.19 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 226,123.02 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 528,451.01 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 36,566.77 |
| 10/21/2004 | 05/18/05 | 08/29/05 | $ | 62,601.50 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 31,945.98 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 38,369.03 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 121,625.06 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 45,707.29 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 31,260.18 |
| 10/21/2004 | 05/02/05 | 08/29/05 | $ | 41,892.78 |
| 7/18/2004 | 04/25/05 | 08/30/05 | $ | 109,458.38 |
| 7/18/2004 | 05/02/05 | 08/30/05 | $ | 168,270.96 |
| 10/21/2004 | 05/02/05 | 08/30/05 | $ | 64,126.59 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 65,428.32 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 813,340.44 |
| 10/21/2004 | 04/29/05 | 08/30/05 | $ | 176,525.35 |
| 10/21/2004 | 05/11/05 | 08/30/05 | $ | 100,488.92 |
| 10/21/2004 | 04/29/05 | 08/30/05 | $ | 778,509.67 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 211,165.66 |
| 10/21/2004 | 05/02/05 | 08/30/05 | $ | 316,698.05 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 237,295.56 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 179,024.72 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 181,479.10 |
| 10/21/2004 | 05/02/05 | 08/30/05 | $ | 97,852.14 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 168,008.64 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 193,505.03 |
| 10/21/2004 | 04/25/05 | 08/30/05 | $ | 26,447.15 |
| 11/26/2004 | 05/02/05 | 09/01/05 | $ | 705,838.01 |
| 11/26/2004 | 05/11/05 | 09/01/05 | $ | 289,785.60 |
| 11/26/2004 | 05/18/05 | 09/01/05 | $ | 858,298.08 |
| 11/26/2004 | 05/18/05 | 09/01/05 | $ | 176,441.29 |

| | | | | |
|---|---|---|---|---:|
| 11/26/2004 | 05/18/05 | 09/01/05 | $ | 91,701.01 |
| 11/26/2004 | 05/18/05 | 09/01/05 | $ | 249,759.59 |
| 11/26/2004 | 05/26/05 | 09/01/05 | $ | 43,787.48 |
| 11/26/2004 | 05/26/05 | 09/01/05 | $ | 31,910.98 |
| 11/26/2004 | 05/26/05 | 09/01/05 | $ | 33,062.65 |
| 11/26/2004 | 05/26/05 | 09/01/05 | $ | 32,552.84 |
| 11/26/2004 | 05/26/05 | 09/01/05 | $ | 34,642.43 |
| 11/26/2004 | 05/26/05 | 09/01/05 | $ | 87,989.53 |
| 10/18/2004 | 04/25/05 | 09/02/05 | $ | 378,801.47 |
| 9/21/2004 | 04/25/05 | 09/02/05 | $ | 615,806.01 |
| 9/21/2004 | 04/25/05 | 09/02/05 | $ | 738,896.73 |
| 9/21/2004 | 04/25/05 | 09/02/05 | $ | 50,363.07 |
| 10/21/2004 | 04/29/05 | 09/02/05 | $ | 454,870.10 |
| 10/21/2004 | 05/02/05 | 09/02/05 | $ | 323,710.46 |
| 10/21/2004 | 05/02/05 | 09/02/05 | $ | 649,967.05 |
| 10/21/2004 | 05/11/05 | 09/02/05 | $ | 189,127.00 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 664,770.40 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 51,566.39 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 45,524.47 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 24,107.31 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 530,425.17 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 17,811.40 |
| 10/21/2004 | 04/25/05 | 09/07/05 | $ | 26,619.50 |
| 10/21/2004 | 04/29/05 | 09/07/05 | $ | 88,581.88 |
| 10/21/2004 | 04/29/05 | 09/07/05 | $ | 139,403.96 |
| 10/22/2004 | 04/25/05 | 09/07/05 | $ | 247,125.41 |
| 10/22/2004 | 04/25/05 | 09/07/05 | $ | 137,360.23 |
| 10/22/2004 | 04/29/05 | 09/07/05 | $ | 308,569.80 |
| 10/22/2004 | 04/29/05 | 09/07/05 | $ | 60,619.24 |
| 10/22/2004 | 05/11/05 | 09/07/05 | $ | 205,320.99 |
| 10/22/2004 | 04/29/05 | 09/07/05 | $ | 171,237.23 |
| 11/26/2004 | 05/02/05 | 09/07/05 | $ | 636,550.31 |
| 11/26/2004 | 05/02/05 | 09/07/05 | $ | 995,410.77 |
| 11/26/2004 | 05/02/05 | 09/07/05 | $ | 70,766.39 |
| 11/26/2004 | 05/02/05 | 09/07/05 | $ | 292,222.16 |
| 11/26/2004 | 05/02/05 | 09/07/05 | $ | 28,092.96 |
| 11/26/2004 | 05/11/05 | 09/07/05 | $ | 1,268,575.98 |
| 11/12/2004 | 05/18/05 | 09/08/05 | $ | 695,298.40 |
| 11/12/2004 | 06/06/05 | 09/08/05 | $ | 1,048,741.68 |
| 11/12/2004 | 05/02/05 | 09/08/05 | $ | 1,039,502.03 |
| 11/12/2004 | 05/11/05 | 09/08/05 | $ | 240,334.19 |
| 11/12/2004 | 05/11/05 | 09/08/05 | $ | 1,021,494.09 |
| 11/12/2004 | 05/11/05 | 09/08/05 | $ | 1,040,799.64 |

| | | | | |
|---|---|---|---|---|
| 10/22/2004 | 04/25/05 | 09/09/05 | $ | 939,305.58 |
| 10/22/2004 | 04/29/05 | 09/09/05 | $ | 903,365.53 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 27,476.36 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 28,116.66 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 27,658.23 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 41,688.26 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 105,334.12 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 185,394.10 |
| 11/26/2004 | 05/02/05 | 09/09/05 | $ | 758,885.73 |
| 11/26/2004 | 06/07/05 | 09/09/05 | $ | 772,587.93 |
| 11/26/2004 | 06/09/05 | 09/09/05 | $ | 523,508.15 |
| 11/26/2004 | 05/11/05 | 09/09/05 | $ | 993,699.68 |
| 11/26/2004 | 05/11/05 | 09/09/05 | $ | 349,762.06 |
| 11/26/2004 | 05/11/05 | 09/09/05 | $ | 144,640.47 |
| 11/26/2004 | 05/18/05 | 09/09/05 | $ | 26,921.04 |
| 11/26/2004 | 05/18/05 | 09/09/05 | $ | 94,652.57 |
| 12/6/2004 | 05/26/05 | 09/09/05 | $ | 957,636.38 |
| 12/6/2004 | 06/06/05 | 09/09/05 | $ | 1,014,939.92 |
| 12/6/2004 | 06/30/05 | 09/09/05 | $ | 330,749.28 |
| 12/6/2004 | 06/30/05 | 09/09/05 | $ | 111,568.35 |
| 12/6/2004 | 06/30/05 | 09/09/05 | $ | 30,168.61 |
| 10/22/2004 | 04/25/05 | 09/12/05 | $ | 381,962.63 |
| 10/22/2004 | 04/25/05 | 09/12/05 | $ | 713,121.60 |
| 10/22/2004 | 04/25/05 | 09/12/05 | $ | 176,413.42 |
| 10/22/2004 | 04/25/05 | 09/12/05 | $ | 75,615.97 |
| 12/8/2004 | 06/20/05 | 09/12/05 | $ | 719,430.33 |
| 12/8/2004 | 06/06/05 | 09/12/05 | $ | 37,367.02 |
| 12/8/2004 | 06/21/05 | 09/12/05 | $ | 423,778.20 |
| 12/8/2004 | 06/06/05 | 09/12/05 | $ | 34,537.22 |
| 12/8/2004 | 06/14/05 | 09/12/05 | $ | 21,256.96 |
| 12/8/2004 | 06/14/05 | 09/12/05 | $ | 13,239.09 |
| 12/8/2004 | 06/14/05 | 09/12/05 | $ | 31,903.93 |
| 12/8/2004 | 06/14/05 | 09/12/05 | $ | 23,940.97 |
| 12/8/2004 | 06/14/05 | 09/12/05 | $ | 18,634.65 |
| 12/8/2004 | 06/14/05 | 09/12/05 | $ | 34,522.82 |
| 10/22/2004 | 05/02/05 | 09/13/05 | $ | 734,061.49 |
| 12/8/2004 | 05/26/05 | 09/15/05 | $ | 1,429,992.26 |
| 12/8/2004 | 05/26/05 | 09/15/05 | $ | 1,025,708.96 |
| 12/23/2004 | 05/26/05 | 09/15/05 | $ | 660,001.49 |
| 12/23/2004 | 05/26/05 | 09/15/05 | $ | 300,839.97 |
| 12/23/2004 | 06/09/05 | 09/15/05 | $ | 147,392.03 |
| 12/23/2004 | 06/09/05 | 09/15/05 | $ | 63,413.01 |
| 12/23/2004 | 06/09/05 | 09/15/05 | $ | 391,490.31 |

| | | | | |
|---|---|---|---|---|
| 12/23/2004 | 06/20/05 | 09/15/05 | $ | 696,470.71 |
| 12/23/2004 | 06/09/05 | 09/15/05 | $ | 314,625.64 |
| 12/28/2004 | 06/30/05 | 09/15/05 | $ | 772,643.33 |
| 12/28/2004 | 06/30/05 | 09/15/05 | $ | 629,028.97 |
| 12/28/2004 | 06/30/05 | 09/15/05 | $ | 141,299.68 |
| 12/28/2004 | 06/30/05 | 09/15/05 | $ | 189,647.48 |
| 12/28/2004 | 06/30/05 | 09/15/05 | $ | 301,949.02 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 231,419.66 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 104,909.14 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 222,684.16 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 382,693.51 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 34,848.18 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 21,206.79 |
| 12/28/2004 | 07/05/05 | 09/15/05 | $ | 39,383.43 |
| 12/28/2004 | 09/01/05 | 09/15/05 | $ | 184,748.31 |
| 12/28/2004 | 09/01/05 | 09/15/05 | $ | 99,702.21 |
| 12/28/2004 | 09/01/05 | 09/15/05 | $ | 81,666.92 |
| 1/7/2005 | 06/23/05 | 09/15/05 | $ | 756,380.46 |
| 1/7/2005 | 06/24/05 | 09/15/05 | $ | 727,698.50 |
| 1/7/2005 | 06/24/05 | 09/15/05 | $ | 773,240.28 |
| 1/7/2005 | 06/24/05 | 09/15/05 | $ | 225,673.76 |
| 1/7/2005 | 07/05/05 | 09/15/05 | $ | 805,321.55 |
| 12/8/2004 | 06/06/05 | 09/16/05 | $ | 261,916.92 |
| 12/8/2004 | 06/06/05 | 09/16/05 | $ | 33,598.10 |
| 12/28/2004 | 09/08/05 | 09/16/05 | $ | 75,509.47 |
| 12/28/2004 | 09/08/05 | 09/16/05 | $ | 82,625.30 |
| 12/28/2004 | 09/08/05 | 09/16/05 | $ | 412,591.74 |
| 1/7/2005 | 06/24/05 | 09/16/05 | $ | 300,230.67 |
| 1/7/2005 | 06/24/05 | 09/16/05 | $ | 460,432.48 |
| 1/7/2005 | 06/30/05 | 09/16/05 | $ | 677,577.14 |
| 1/7/2005 | 08/01/05 | 09/16/05 | $ | 81,184.09 |
| 1/7/2005 | 08/01/05 | 09/16/05 | $ | 43,413.70 |
| 1/7/2005 | 08/01/05 | 09/16/05 | $ | 174,692.00 |
| 1/7/2005 | 08/01/05 | 09/16/05 | $ | 80,647.72 |
| 1/7/2005 | 08/12/05 | 09/16/05 | $ | 340,220.07 |
| 1/7/2005 | 08/12/05 | 09/16/05 | $ | 333,684.75 |
| 1/7/2005 | 08/18/05 | 09/16/05 | $ | 79,867.15 |
| 1/7/2005 | 08/18/05 | 09/16/05 | $ | 42,080.77 |
| 1/7/2005 | 08/18/05 | 09/16/05 | $ | 98,635.67 |
| 1/7/2005 | 08/18/05 | 09/16/05 | $ | 79,431.08 |
| 1/7/2005 | 06/23/05 | 09/16/05 | $ | 1,417,702.96 |
| 1/7/2005 | 07/05/05 | 09/16/05 | $ | 555,900.14 |
| 1/7/2005 | 07/08/05 | 09/16/05 | $ | 1,336,745.61 |

| | | | | |
|---|---|---|---|---|
| 1/7/2005 | 07/05/05 | 09/16/05 | $ | 419,207.32 |
| 1/7/2005 | 07/14/05 | 09/16/05 | $ | 37,898.94 |
| 1/7/2005 | 07/14/05 | 09/16/05 | $ | 41,305.79 |
| 1/7/2005 | 07/14/05 | 09/16/05 | $ | 21,365.76 |
| 1/7/2005 | 07/14/05 | 09/16/05 | $ | 18,701.68 |
| 1/7/2005 | 07/14/05 | 09/16/05 | $ | 18,797.40 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 13,532.02 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 16,246.25 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 10,630.13 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 14,960.20 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 17,627.77 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 14,754.31 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 17,668.38 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 17,606.71 |
| 1/7/2005 | 08/15/05 | 09/16/05 | $ | 17,620.98 |
| 1/7/2005 | 09/09/05 | 09/16/05 | $ | 830,044.37 |
| 2/23/2005 | 08/04/05 | 09/16/05 | $ | 1,018,297.41 |
| 2/23/2005 | 08/12/05 | 09/16/05 | $ | 632,235.33 |
| 2/23/2005 | 08/04/05 | 09/16/05 | $ | 298,464.76 |
| 2/23/2005 | 08/04/05 | 09/16/05 | $ | 1,437,849.83 |
| 2/23/2005 | 08/04/05 | 09/16/05 | $ | 82,742.41 |
| 2/23/2005 | 08/04/05 | 09/16/05 | $ | 1,492,997.33 |
| 2/14/2005 | 08/04/05 | 09/16/05 | $ | 337,315.39 |
| 2/14/2005 | 08/04/05 | 09/16/05 | $ | 1,003,848.29 |
| 2/14/2005 | 09/09/05 | 09/16/05 | $ | 304,243.61 |
| 2/9/2005 | 07/21/05 | 09/16/05 | $ | 19,788.30 |
| 2/9/2005 | 07/21/05 | 09/16/05 | $ | 26,060.84 |
| 2/9/2005 | 07/21/05 | 09/16/05 | $ | 12,870.59 |
| 2/9/2005 | 07/21/05 | 09/16/05 | $ | 760,684.83 |
| 2/9/2005 | 08/08/05 | 09/16/05 | $ | 709,800.26 |
| 2/9/2005 | 08/25/05 | 09/16/05 | $ | 745,191.45 |
| 2/9/2005 | 08/08/05 | 09/16/05 | $ | 748,050.33 |
| 2/9/2005 | 07/14/05 | 09/16/05 | $ | 1,023,857.50 |
| 2/9/2005 | 07/18/05 | 09/16/05 | $ | 337,562.31 |
| 2/9/2005 | 07/21/05 | 09/16/05 | $ | 792,199.73 |
| 2/9/2005 | 07/28/05 | 09/16/05 | $ | 804,019.65 |
| 2/9/2005 | 07/28/05 | 09/16/05 | $ | 340,509.60 |
| 10/21/2004 | 05/02/05 | 10/19/05 | $ | 427,933.44 |
| 10/21/2004 | 05/02/05 | 10/19/05 | $ | 10,635.39 |
| 10/21/2004 | 05/02/05 | 10/19/05 | $ | 63,658.45 |
| 10/22/2004 | 04/25/05 | 10/19/05 | $ | 1,400,199.12 |
| 11/26/2004 | 05/11/05 | 10/20/05 | $ | 764,576.20 |
| 11/26/2004 | 05/18/05 | 10/20/05 | $ | 42,155.02 |

| | | | |
|---|---|---|---|
| 12/23/2004 | 06/06/05 | 10/26/05 | $ 666,695.92 |
| 12/28/2004 | 09/01/05 | 10/26/05 | $ 141,262.05 |
| 2/23/2005 | 09/09/05 | 10/26/05 | $ 538,556.09 |
| 2/23/2005 | 09/09/05 | 10/26/05 | $ 727,092.51 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 80,518.63 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 78,664.26 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 81,750.74 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 95,141.28 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 72,458.01 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 93,036.77 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 157,043.84 |
| 2/14/2005 | 09/09/05 | 10/26/05 | $ 184,361.42 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 33,756.98 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 40,338.36 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 90,288.37 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 236,454.46 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 261,205.15 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 82,228.55 |
| 2/14/2005 | 09/15/05 | 10/26/05 | $ 81,492.10 |
| 11/26/2004 | 05/18/05 | 11/02/05 | $ 39,332.43 |
| | | | **$78,997,917.04** |
| | **Total:** | | |

49.     The claims that BNP and Cruz made to USDA, or caused to be made to USDA, based on the guarantees identified in the Table set forth in Paragraph 48, were materially false and/or fraudulent because the guarantees were obtained by ineligible parties in violation of the material terms of the regulation authorizing such guarantees.  These claims were also false and fraudulent because false statements were used to obtain the guarantees at the outset of the related transactions.  These claims were also false and fraudulent because they were tainted by the illegal bribes, commissions, and gifts paid by Villarreal to BNP's Cruz in return for BNP's role in the conspiracy.  These claims were also false and fraudulent because portions of the related loan proceeds were diverted by the defendants and their co-conspirators to improper purposes not permitted by the SCGP.  Finally, these claims were false and fraudulent because they were

19

connected to sham transactions that did not involve the actual export of qualified commodities and were in no way contemplated or permitted by the SCGP.

50.    BNP and Cruz submitted or caused to be submitted the above-described false and/or fraudulent claims on the CCC payment guarantees with knowledge that the claims were false for the reasons set forth herein.  The United States has been damaged as a result of these false and/or fraudulent claims.

51.    As a result of their participation in the scheme described herein, BNP and Cruz have profited substantially.

52.    The USDA referred the commodity guarantee scheme to the United States Attorney's Office for the Southern District of Texas (USAO), Criminal Division, in or about June or July 2005, for investigation.  An investigation of the scheme by the USAO, Criminal Division, did not commence before August 11, 2005.  On March 24, 2010, Cruz, Villarreal, See, Gonzalez, Hinojosa and Villalon were indicted on charges pertaining to the scheme.  On information and belief, the official of the United States charged with responsibility to act in the circumstances did not know nor should have known the facts material to the right of action any earlier than October 19, 2005, and the United States believes it is probable that the date is later.

**COUNT I**
**Violation of the False Claims Act**
**31 U.S.C. §§ 3729(a)(1)**
**(Against BNP and Cruz)**

53.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 52 above, as if fully set forth herein.

54.    Defendants BNP and Cruz violated the False Claims Act, 31 U.S.C. § 3729(a)(1), by knowingly presenting or causing to be presented to the United States Government, false or fraudulent claims for payment on the CCC commodity payment guarantees assigned to BNP by any of the U.S. Exporters, and pertaining to agricultural commodity sales to any of their related Mexican Importers, and which the United States paid, as set forth in the Table in Paragraph 48 herein.

55.    Pursuant to 31 U.S.C. § 3729(a), Defendants are liable to the United States Government for a civil penalty of not less than $5,500, and not more than $11,000 for each violation of the FCA committed by defendants.

56.    As a result of Defendants' false or fraudulent acts as described above, the United States Government has sustained damages in an amount to be determined at trial.  Pursuant to 31 U.S.C. § 3729(a), defendants are liable for three times the amount of all such damages sustained by the United States Government because of the conduct of BNP and Cruz.

**COUNT II**
**Violation of the False Claims Act**
**31 U.S.C. § 3729(a)(1)(B)(2009)**
**(Against BNP and Cruz)**

57.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 56 above, as if fully set forth herein.

58.    Defendants BNP and Cruz violated the provisions of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) (2009) by knowingly making, using, or causing to be made or used, false records or statements material to false or fraudulent claims, which the United States paid.

59.    Pursuant to 31 U.S.C. § 3729(a), defendants are liable to the United States

Government for a civil penalty of not less than $5,500, and not more than $11,000 for each violation of the FCA committed by defendants.

60.     The United States Government has sustained damages, in an amount to be determined at trial.  Pursuant to 31 U.S.C. § 3729(a), defendants are liable for three times the amount of all such damages sustained by the United States Government.

**COUNT III**
**Violation of the False Claims Act**
**31 U.S.C. §§ 3729(a)(3)**
**<u>(Against BNP and Cruz)</u>**

61.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 60 above, as if fully set forth herein.

62.     Defendants BNP and Cruz have violated the provisions of the False Claims Act, 31 U.S.C. § 3729(a)(3) by knowingly conspiring to defraud the government by getting a false or fraudulent claim allowed or paid, and which the United States paid.

63.     Pursuant to 31 U.S.C. § 3729(a)(3), defendants are liable to the United States Government for a civil penalty of not less than $5,500, and not more than $11,000 for each violation of the FCA committed by defendants.

64.     The United States Government has sustained damages, in an amount to be determined at trial.  Pursuant to 31 U.S.C. § 3729(a), defendants are liable for three times the amount of all such damages sustained by the United States Government.

**COUNT IV**
**For Unjust Enrichment**
**(Against BNP and Cruz)**

65.     The government hereby incorporates by reference paragraphs 1-64 as though fully set forth herein.

66.     Defendants BNP would be unjustly enriched if they are permitted to retain monies paid by the government pursuant to claims for loss submitted by BNP, and are under a duty to repay those monies to the government.

67.     Defendant Cruz would be unjustly enriched if he is permitted to retain monies received in the form of bribes or kickbacks from the proceeds of funds ultimately paid by the government pursuant to claims for loss submitted by BNP, and he is under a duty to repay those monies to the government.

**COUNT V**
**For Payment By Mistake**
**(Against Defendant BNP)**

68.     The government hereby incorporates by reference paragraphs 1-68 as though fully set forth herein.

69.     The government's payments to defendants BNP pursuant to claims for loss submitted by BNP were paid under mistake, and BNP is not entitled to retain those monies, but instead is under a duty to repay those monies to the government.

## **PRAYER FOR RELIEF**

70.     WHEREFORE, plaintiff United States prays for judgment against the defendants, as follows:

A.     As to Counts I, II, and III under the False Claims Act, 31 U.S.C. § 3729(a), against BNP and Cruz, for treble the damages sustained by the United States to be proven at trial, plus civil penalties as are allowable by law in the amount of $5,500 to $11,000 per violation, post-judgment interest, and costs;

B.     As to Count IV, unjust enrichment, against BNP and Cruz, for the sums by which defendants have been unjustly enriched, which will be proven at trial, plus pre-judgment and post-judgment interest, and costs; and

C.     As to Count V, against BNP, payment by mistake, for the sums mistakenly paid by the United States, which will be proven at trial, and for pre-judgment and post-judgment interest, and costs.


THE UNITED STATES DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

24

Dated: October 18, 2011     Respectfully submitted,

           TONY WEST
           Assistant Attorney General
           KENNETH MAGIDSON
           United States Attorney
           Southern District of Texas

     By:  /s/ Michelle Zingaro
           MICHELLE ZINGARO
           Assistant United States Attorney
           Fed. Bar No. 14463
           Texas Bar No. 12345500
           919 Milam, Suite 1500
           P.O. Box 61129
           Houston, Texas 77208-1129
           (713) 567-9512

           /s/ Linda M. McMahon (by MZ)
           Linda M. McMahon
           Joyce R. Branda
           Michal Tingle
           U.S. Department of Justice
           Civil Division
           P. O. Box 261
           Ben Franklin Station
           Washington, D.C. 20044
           (202) 307-0448